**COMMERCIAL STANDARD INS. CO. v.
MARKET PRODUCE CO., Inc.**

No. 6036.

Court of Appeal of Louisiana. Second Circuit.

March 6, 1940.

Rehearing Granted April 4, 1940.

On Rehearing June 10, 1940.

Lester Wilson and Michael A. Maroun, both of Shreveport, for appellant.

Irion & Switzer, of Shreveport, for appellee.

DREW, Judge.

Plaintiff sues to recover from defendant the sum of $255.44, alleging that it issued to defendant a liability insurance policy effective of date. February 13, 1937. It further alleged that after carrying the policy until April 30, 1937, it was cancelled by plaintiff and that the earned premium amounted to the sum sued for.

Defendant denied liability, alleging that no. policy or binder was ever delivered to it and further alleged that there was never a complete or binding contract between it and the plaintiff.

The lower court awarded judgment as prayed for and defendant is prosecuting this appeal. We were not favored by the lower court with a written opinion and do not know upon what grounds its judgment is based.

The policy in question was issued by the Commercial Standard Insurance Company through its General Agent, Calhoun & Barnes, Incorporated. The local agency which dealt with defendant was the Hayden Insurance Agency. It is testified to by Mr. Barnes, president of Calhoun & Barnes, Inc., that the Hayden Insurance Agency was the agent of the assured and not of the insurer, and counsel for plaintiff so contend in this court. We are unable to agree with this contention. The Hayden Insurance Agency sought the business of defendant and defendant did not seek its services. There are numerous letters in the record wherein plaintiff threatens to cease doing business with the Hayden Insurance Agency unless it paid the claim sued for here, stating that it did not care to do business with any agency which did not pay its bills as they fell due. There are other letters which urge the Hayden

Insurance Agency to secure this policy. It is clear to us that the Hayden Insurance Agency was the agent of the insurer.

L. E. Hayden, Jr., of the Hayden Insurance Agency, contacted defendant's president in regard to insuring a fleet of trucks used by defendant in its produce business. He secured a list of the vehicles and submitted it to the insurer's General Agent, Calhoun & Barnes, Inc., and requested a price on such liability and property damage insurance. This request was dated February 3, 1937. A reply, dated February 5th, was sent to the Hayden Insurance Agency quoting a price of $649 for liability insurance and $470 for property damage. These prices were submitted to defendant and accepted by it. On February 11, 1937, the Hayden Insurance Agency by letter directed Calhoun & Barnes, Inc., to · issue the policy, in accordance with the quoted rates. The policy was issued and mailed to the Hayden Insurance Agency, but the consideration was not as quoted, being for $1,396. On March 2, 1937, the Hayden Insurance Agency wrote to the general agent in part as follows: "This will acknowledge receipt of the above captioned policy, and I have just returned from their office and they feel that the policy should have been written in accordance with the rates I quoted them on the binder that was issued, and they say that they don't think they will accept the policy at a premium of $1396.00, as they have been quoted a rate by other companies for a less amount, which I have investigated and find to be true."

This letter was in reply to one from the general agent, of date March 1, 1937, in which it stated that the policy was issued with a revised premium which was higher than the one quoted on February 5th. In this letter it said:

"Needless to say, this class of business has not been profitable and we ask that you contact the assured promptly and if for any reason the policy is not acceptable, at the rates written, we ask that you kindly return it promptly for cancellation. * * *

"Please collect at least 25% of the premium and remit to us promptly."

In reply to this letter on March 5, 1937, Calhoun & Barnes, Inc., wrote the following letter:

"We are in receipt of your letter of the 2nd instant in reference to the above policy. We appreciate the trouble you are having in delivering this policy at the increased premium; however, we are unable to have the Home Office reduce this premium, as this class has been very unprofitable to the companies and very few of them are writing it at the present time.

"We believe that if some other agent agrees to accept this business at the reduced premium, the company will insist on the premium's being increased when the daily report is received at the Home Office.

"We trust that you will be able to have the assured accept our policy, but if they are unwilling to accept same, it will be necessary that you return the policy for cancellation. Please do not allow this policy to remain outstanding unless the assured agrees to accept same as the company will expect to receive an earned premium on same if it is outstanding for any length of time.

"If the assured will accept our policy and has a good experience during this year, we feel sure that the company will be glad to make a reduction in the premium when the policy comes up for renewal."

In a letter from the Hayden Insurance Agency to Calhoun & Barnes, Inc., dated March 11, 1937, Hayden said:

"We have contacted Mr. Ablone and have successfully delivered the above numbered policy. However, while we were getting the policy he had discontinued the cars insured under Item 1, 2 and 12, and we will thank you to issue an endorsement showing a return premium of the premium charged under the three cars. And issue an endorsement changing No. 14 from a 1935 Chevrolet Coupe to a 1936.

"They are going to replace the three cars eliminated sometime in the near future, and at that time we will add them back to the schedule.

"I have not collected any money under the policy up to date but will do so the early part of next week, at which time I will remit you whatever amount I collect."

On March 15, 1937, the insurer ordered its general agent, Calhoun & Barnes, Inc., to cancel the policy and on March 23, 1937, this information and order for cancellation of the policy was sent to the Hayden Insurance Agency by Calhoun & Barnes, Inc.

The policy was returned to the general agent by the Hayden Insurance Agency on May 7, 1937.

On March 22nd, the day before the cancellation order was directed to the Hayden Insurance. Agency, defendant gave to it its check for $98.66, which check Hayden cashed, but did not remit any part of it to the insurer or its general agent, and later gave defendant its check in return of the money.

On May 24, 1937, Hayden wrote to the general agent as follows:

"This will acknowledge receipt of your letter of May 21st, enclosing statement of Commercial Standard Insurance Company February balance. I notice from your statement you have me charged with $255.-44 earned premium under policy No. 460705, Market Produce Company. In connection with the Market Produce Company policy, I have not collected any money under this item and was put to quite a bit of expense working up the business and had made arrangements to finance the policy whereby you would have received the entire net due you, but the day I was to close the deal, I received your letter asking cancellation of the policy and was unable to collect any premium from the assured. I want to corporate with you in every way possible and if you want to collect this premium direct from the assured, it will be all wright with me and I will assist you in any way I can in doing so, however, I think nothing less than a lawsuit will collect the money.

"Please advise me what you think is the best way to handle this matter and as soon as I hear from you I will remitt for the February Commercial Standard Account consisting of other items."

The general agent made many efforts by letter to collect the amount claimed here from the Hayden Insurance Agency and it was not until March 4, 1938, that any demand was made on defendant, at which time defendant replied as follows: "We decline payment of the above what you claim we owe you, as we have never gotten policy also never were assured of any accident which may have ocured by Hayden Ins. Agency. Hayden kept in touch with us and advised us that this policy was not approved yet."

Mr. Hayden, of the local agency, testified that he left the policy with defendant and that it accepted it. However, his testimony is very indefinite. He stated he had no record of delivering it and finally stated that he left it on defendant's desk and told its president they would work out something different on the premium. He is also very indefinite about taking up the policy and finally states that he went to defendant's place of business on May 1, 1937, secured the policy and returned it to the general agent a few days later. He has no recollection of anything being said by him or the president of defendant company at that time and he gives no sound explanation why he returned to defendant the $98.-66 it had paid to him. The little things which might give credence to his testimony are missing. On the other hand, the president of defendant company is very positive that the policy of insurance was never left at his place of business and was at no time ever in his possession. He stated that he paid the $98.66 to Hayden because Hayden told him he would have to send in part of the premium before the policy would issue, and that after calling Hayden several times on the telephone to know why the policy had not come, Hayden told him plaintiff had refused to issue the policy at the quoted premium price, came down to his place of business and returned him the money he had paid Hayden. Hayden attempted to corroborate himself by showing that after he found defendant would not pay the increased premium, he and defendant's president agreed to an endorsement to be placed on the policy removing from the policy coverage two trucks and a coupe, thereby reducing the premium. He filed the endorsement in evidence, on the face of which is a blank space for the assured to accept. It is still blank and nowhere on the endorsement is there anything to show that defendant or its officers had any knowledge of this instrument. The president of defendant company denies any such transaction ever taking place in his presence.

It is certain to our minds that Hayden did not think there was ever any insurance contract between plaintiff and defendant. If he had thought so, he would never have returned the money defendant had paid him. And we are also certain from the record that there was never a completed and binding contract between plaintiff and defendant. There was never any meeting of minds as to the price, and the record fails to show by a preponderance of the testimony, as required by law, that the policy of insurance was ever in defendant's possession.

Although we dislike to reverse a lower Judge on questions of fact, there are some cases in which it is necessary to do so. This is one of those cases.

Plaintiff has failed to make out its case and the judgment of the lower court is reversed and the demands of plaintiff rejected, at its costs.

On Rehearing.

TALIAFERRO, Judge.

 On application of plaintiff, a rehearing was granted herein to the end that further study could be given the case. This has been done. Although the sole question involved is one of fact, and our former judgment reversed the conclusion of the trial judge thereon, additional study of the record has not served to alter our first decision. Plaintiff, of course, 'carried the burden of proof. We are confirmed in the opinion that it has not discharged this burden, and this being true, the issue must be resolved against it.

For these reasons, our former judgment herein is reinstated and made the final decree of the court.